May it please the Court, my name is Matt Hayhurst, and I'm here today on behalf of Petitioner Charles Asimonye. I would first like to introduce Mr. Asimonye, who traveled 28 hours by bus to be here to attend the hearing today. Mr. Asimonye specifically requested that I thank the Court and this panel for providing the opportunity to have oral argument today. This case was here before the Ninth Circuit before, and I think the case has been well briefed this time and thoroughly examined all the issues. I certainly don't have time to hit all the issues in my short time here, but I'd like to emphasize three points. The first point relates to the merits of this appeal. Mr. Asimonye was a political activist, a young political activist in Nigeria, and he endured horrible torture at the hands of the Nigerian SSS. This Court has faced this circumstance before. In two recently decided cases, the Salam case and the Aikenmaid case, this Court saw circumstances where other young political activists in Nigeria were beaten and tortured under circumstances very similar to Mr. Asimonye's. Two questions. Let's assume we agree for argument purposes that he suffered past persecution. What is the remedy you are seeking? To what extent do changed country conditions still play any role in what happens now or in the future? What is it you want us to do if we assume that there was evidence of past persecution? What we're asking the Court to do is order withholding of deportation and also to grant relief under the Convention Against Torture. If there's a finding of past persecution, which I believe there was, it's going to raise the presumption of future persecution, which the government has not rebutted in this case. And in fact, in the cases that I mentioned, the Aikenmaid case and the Salam case, this Court talked about the fact that the country reports actually suggest that the conditions in Nigeria are dismal and remain horrible. Well, let me ask a slightly different question on that point. Assuming past persecution, the – and assuming, at least as I think, the I.J. got the burden of proof wrong, which necessarily was true because he found or she found no past persecution, so therefore he put the burden on you to rebut the country conditions report. I think that what the I.J. did was incorrect. Okay. Assuming it was incorrect, then basically we don't have a correct finding without being skewed by an incorrect burden of proof allocation. So why wouldn't the proper thing to do be to remand under Ventura for the I.J. to decide in the first instance, under a correct allocation of proof, whether the changed country conditions are sufficient to overcome the presumption? Well, may I add to that question? Assuming we do remand under Ventura, what country conditions would the I.J. be considering, those at the time of the hearing or current country conditions? Just to add to the question. Yes, Your Honor. I think that in terms of the conditions, I would argue that the conditions inquiry would be limited to what's in this record. This Court has acknowledged the circular problem that would occur in the event that this Court were remanding and we were going back down and looking at new changed country conditions. It would be sort of a – it would never end. I think in terms of Judge Reimer's question about whether this should be remanded the government already had that opportunity. And we already have evidence in this record that this Court, in the Aikenmaid case and the Salaam case, has said is insufficient. Yes, the immigration judge, I think, put the burden of proof incorrectly on Mr. Asimonia, but we know that the only evidence in the record supports the claim. And in the second case, the Salaam case, it talks about the fact that these country reports definitively show – But the problem is that they were different country reports or applied to different time periods. So they're not precisely the same as this one. You're right, Your Honor. So that doesn't really exactly answer the question. Although the timeframe of the torture we're talking about is the same in all three cases. I understand, but the – theoretically, at least, the country conditions could have radically changed in the year or whatever that elapsed since the Salaam and whatever the other name of the case is. Yes, Your Honor. And I think it's also worth noting, though, where the prejudice lies here. Mr. Asimonia was originally put into deportation proceedings six years ago, and here we are now with the immigration judge applying the wrong burden of proof and the government failing to – Well, he's still here, so he hasn't been prejudiced. Well, I think he has, Your Honor, with all due respect. He's unable to get citizenship here. He's unable to get a work permit. He's effectively been living homeless in California for the past five years. He simply can't do anything because he can't get a work permit, he can't get a driver's license. I believe there is prejudice. Certainly, being in the United States would be better than being deported to Nigeria. I will concede that point. But I also believe that any prejudice that exists for the country conditions issue should be laid in Mr. Asimonia's favor, and we shouldn't be penalized for the government's failure to submit different evidence and for the immigration judge's failure to apply the proper standard. See, to me, the problem isn't the failure to submit the proper evidence. I mean, it did put in the country conditions report. And what you're effectively asking us to do is to paw through it ourselves and apply it in the first instance. And that's my concern. I think that the difference – Under correct burden of proof. Yes, Your Honor. And I just think that under the correct standard as applied in the Aiken May case and the Salam case, yeah, they weren't exactly the same years of country reports, but you're talking about the same time frame and you're talking about this court in those cases looking at those reports and saying, look, the conditions haven't changed in Nigeria. So that issue ends on that point. Well, in this case, both the IJ and the BIA did look at the country conditions, and we have authority, the Ali case, that suggests that when they have gone through the process, then our role is to decide whether their finding is justified. Now, there's also the Lopez case that says that if it's not an individualized determination, then a Ventura remand is appropriate. Which of those two cases, or maybe you have another case, do you argue falls under? Yeah, I think it falls under the Lee rationale, Your Honor, which we cited in our brief, and there's additional cases that have come up since, the Kup case, K-H-U-P, the Kuh case, Q-U, and the Babala case, B-A-B-A-L-L-A-H. All of those cases say there's no remand if the immigration judge or the board considered the issue in the first instance. And in the Babala case, 367 F. 3rd, 1067, the Court said that there's no remand where the INS failed to present evidence of changed country conditions. Well, Percy, the problem, I mean, that's you're then saying we should look at it, even though it made his findings under an incorrect burden of proof, and even though he didn't make an individualized determination, we're supposed to now say was he, was a reasonable fact finder compelled to find otherwise? I think it's right, Your Honor. It's a much tougher deal for you. It's a much tougher road to hoe than just to go back and have him look at it to begin with and then come back on a correct standard of proof, isn't it? Well, I think the Court did that in both the Salam case and the Aiken-Maid case. It made that determination. And under the cases mentioned by Judge Fischer, a remand isn't required. With Judge Rimer's admonition, I'd like to keep my last minute and 45 seconds for rebuttal. Thank you. Mr. Larson. Good morning. My name is Curt Larson for the Attorney General. The brief submitted to this Court makes this case indefensible and this case should be remanded. The Department of Justice attorneys act in a myriad of different ways, and one of the ways that we act is gatekeepers. I'm sorry. Can you sort of speak up? I'm losing some of what you're saying. I'm sorry. The Department of Justice attorneys act as gatekeepers during certain times. After reviewing this case and looking at what was submitted to this Court, specifically the statement that the IJ didn't look at the asylum application and if he did, it should be remanded, that is an indefensible position. It's not a waiver argument. It's not something that I believe falls under what is the Department of Justice and what we should do in the overall sense of what is justice. So at that point, I looked at this case, took it to the Director of the Office of Immigration Litigation, requested remand. He approved remand, and then I got authorization from DHS to remand this case. Counsel, I found strange in your brief. You made a statement that if the immigration judge takes testimony, he doesn't have to look at the complaint. What authority is there? That's incorrect. But he's just saying they were going to remand it. It's indefensible. It's a bad brief. You are saying it's indefensible. Yes, ma'am. All right. I thought it was defensible. Sorry. No, ma'am. It's indefensible. Thank you. So it should be remanded for Ventura. The question that I would like to ask is why? Why? Even under the, taking Judge Reimer's point, even under a wrong burden of proof where the burden of proof is improperly put on the applicant, if the country condition reports have substantial indications in it that there is still persecution going on, there's lots of evidence of that, lots of statements to that effect, it's been ameliorated to some extent but not eliminated, then assuming a proper burden of proof, isn't the government's case even more fragile and what difference is it going to make? Well, first of all, there's why go through this process of kind of going through the same country report when it's documentary evidence? Once we assume that this fellow has been persecuted and the burden is on the government, why doesn't a Lee in that line of case is controlled? First of all, a Ventura Supreme Court case basically states that, you know, within, you know, within broad limits, the law is entrusted to the immigration courts to handle this case. There's only very, carved out very limited exceptions, and you carved it out in the Lee case. The government would actually state that the dissent in Lee is one that's actually the correct part of that. Well, we're bound by our own authority. Say again, sir. We're bound by our own authority. The Supreme Court, sir. Well, but the Lee came after Ventura and took that into account, sir. But the government believes that the dissent in Lee is actually the one that should be followed. That being stated, let's look at past persecution. Well, there also was no finding individualized to him. So if we were to uphold it, we would have to make some kind of meandering finding of whether the country conditions report are individualized to the Petitioner, wouldn't we? Exactly. And that's why in Ventura it says that these cases are complex, not only with the facts, but also with the law that's out there. And speaking to past persecution, there was no finding of past persecution from the IJ or the board in this case. And there's a good reason for that. They made their reasons. But let's look at if there wasn't past persecution and also noting the fact that he missed the one-year deadline on the asylum application. Now we're looking prospectively at what is withholding and what is torture convention. If you're looking prospectively at that, what person was looking forward to return to the country, the SSS, as was stated in the State Department notes, has been severely diminished, curtailed, more and more. I'm really not following this argument. You're suggesting that because the IJ made an indefensible error in the brief. No, I'm not stating that, Your Honor. I'm stating the brief that's submitted to this Court is indefensible. Well, it argued that there wasn't evidence of past persecution. And the record is clear that. I'm sorry. Say that again, sir. The brief was arguing that there was no evidence of past persecution that the IJ found against him and that the IJ had only to look at the testimony and the evidence is clear that the application laid forth and there was no adverse credibility finding on it. That's correct. And so you're saying because the brief is in error, all of the this all goes back to square one unless I'll do it all over again. Well, the only thing that this Court can do. None of our resources are devoted to saying, gee, we caught you, you know, the brief is bad, so scratch everything out and the INS or the DHS starts all over from scratch. That's not how it works. Well, it does, because under Ventura, again, you've got limited abilities of what you can do. You can't, this Court can't be a fact finder. Well, we don't have to be a fact finder. We can find there's a difference of opinion, Your Honor. Counsel, we can make a determination, I believe, this is my understanding, that if the record comes to us in a finding that there was no past persecution, which is the finding, and that there is no finding of adverse credibility, we can find that that determination is not supported by substantial evidence and determine, therefore, that there is past persecution. Then the question is, what happens next? And you're suggesting that because of the error in the brief, he doesn't even go back with a presumption of past persecution. The IJ does it all over again. I don't understand that. Well, there's another point that needs to be brought up, even though the brief itself is bad. One of the points that was made in the brief, and that I would at least talk to and argue in this case, is that the IJ didn't look at the asylum application and the board didn't look at the asylum application. And, therefore, if the IJ and the board didn't look at the asylum application, you have to send it back to the IJ? I don't think that's right, Counsel. I don't think if they make an error of that magnitude that we suddenly say, oh, well, you know, they procedurally fouled up. I still don't think it was the IJ or the board that made the mistake, Your Honor. I think the mistake is in the brief, Your Honor. No, it's not in the brief. If it's in the brief, the brief may have said whatever it said, but the record that's before us is that there's an asylum application which lays out in quite definitive detail what kind of persecution and torture he went through, okay? And then there's no adverse credibility finding. Under that structure, we can look to the application. That's established law. We can look to the testimony, the record before the IJ, and we can decide with all the deference due to the IJ and to the BIA whether or not it's substantial. And that's what kind of decision we make. And if we disagree, we say that since there's no adverse credibility finding and the evidence of record supports past persecution, then we might remand for further proceedings on something that wasn't considered. But in this case, both the IJ and the BIA did look at country conditions. And then the question is, and Ventura says, if the BIA hasn't had the opportunity in the first instance to look at it, and then the question is, well, in this case they've looked at it, but either under the wrong burden of proof or because they weren't looking at the application or whatever, that's the thorny issue in this case as to whether that comes under Ventura or it comes under Ali. They've had their shot at it, and we decide based on the record, or we decide that they didn't get a chance to look at it under the right standard. It goes back under Ventura. But I don't understand it going back for purposes of reinvestigating past persecution. The government respectfully disagrees with your position. And your authority for that is Ventura. It's Ventura, absolutely. And the dissent in Lee. I'm sorry? And the dissent in Lee, though that's not binding, but it's still dissent. Normally we are bound by our own. All right. If Judge Fischer isn't correct, and if I'm correct, you don't object to going back on a remand for the purpose of applying, considering future persecution on a under a correct burden of proof, I assume. Correct. Yes, Your Honor. Well, I don't understand that, because the correct burden of proof determines based on whether or not he's established past persecution. Well, my point, in case it hasn't been clear, is that there was error in deciding that there was no past persecution, which then caused the I.J. to skew the burden of proof that he applied to a well-founded fear of future persecution, which is, given the asylum lateness, the only issue that exists. And I just want to confirm that you, the government, doesn't object to a remand for that purpose under Ventura, even though you would prefer a broader one. Correct. Okay. Got it. Thank you very much. Okay. Mr. Hayhurst. Thank you, Your Honor. First, I think it's important to point out that this Court, through the appellate commissioner, previously denied the government's request for a motion to remand in the prior appeal. As soon as this Court appointed me as counsel, the government promptly moved to remand the case under what I believe was the desire to have a credibility finding. And we opposed that, and the appellate commissioner denied that request. I just think it's important to point that out. That was an order of the Court dated October 2, 2002. Secondly, this Court is bound by the Lee opinion. A three-judge panel's decision is binding on this Court unless it's overruled by an unmarked decision or by the U.S. Supreme Court. And under Lee and the other cases I mentioned, this Court is not required to remand. Well, there's no finding of individual – there's no individualized assessment relative to the country condition report. So how can we make that finding? Well, I think that's – One has to make it. I agree that the I.J. applied the wrong standard. There's – He also did not make an individualized determination. So we can't say up or down on it. Well, I think – We would have to do that, right? I wouldn't agree, Your Honor. I don't – Why not? I wouldn't agree because the I.J. attempted to make an individualized determination. And, in fact, in the BIA's opinion – Didn't even mention the Petitioner. Didn't say anything about where he lived, where he could relocate, how the particular changed country conditions that he relied on affected him personally. None of those things. On page 27 of the – We would have to do that, wouldn't we? No, Your Honor. On page 27 of the excerpts, it says the administrative judge or the immigration judge correctly pointed out that it hardly appears, more likely than not, that the government of Nigeria would notice or be concerned with the return of the respondent. And the I.J. did make some admittedly feeble findings, but nonetheless said, Look, Nigeria is not going to be concerned when their political activist who they tortured comes back. So there was that application, and it's improper in an indefensible case on the government's part for them to get a second bite at the apple. And I would only request that if this Court does remand, that it limits remand to a very specific issue and that we don't get into credibility assessments, we don't get into past persecution, and that the only issue be whether or not the government has rebutted the presumption of future persecution through country conditions. Otherwise, I think that the Board of Immigration Appeals and the I.J. could have carte blanche to do what they please. Thank you. Thank you. Thank you, counsel, both of you, for your argument. The matter just argued will be submitted.
judges: D.W. Nelson, Rymer, Fisher